# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:16-CV-00163-RJC

| | |
|---|---|
| DANNY C. MARTIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment, (Doc. No. 11); Plaintiff's Memorandum in Support, (Doc. No. 12); Defendant's Motion for Summary Judgment, (Doc. No. 14); and Defendant's Memorandum in Support, (Doc. No. 15). The motions are ripe for adjudication.

**I.  BACKGROUND**

    A. Procedural Background

Danny C. Martin ("Plaintiff") seeks judicial review of Nancy A. Berryhill's ("Defendant" or "Commissioner") denial of his social security claim. Plaintiff filed an application under Title II for a period of disability and disability insurance benefits on April 25, 2012, alleging an onset date of July 22, 2009. (Doc. Nos. 10 to 10-19: Administrative Record ("Tr.") at 277-282, 283-288). His applications were denied first on September 5, 2012, and again on October 29, 2012 upon reconsideration. (Tr. 174, 184). Plaintiff filed a timely request for a hearing on November 5, 2012 (Tr. 202), and an administrative hearing was held by an administrative law judge ("ALJ") for the Social Security Administration on March 3, 2014, during which Plaintiff was represented by the first of three different attorneys. (Tr. 70-116).

During this first hearing, the ALJ found a lack of medical proof of disability and agreed, at Plaintiff's request, to order two consultative exams ("CE"). (Tr. 112). The ALJ explained to Plaintiff that he could not decide the case based solely on his testimony. (Id.). Plaintiff, Plaintiff's attorney, and the ALJ agreed the record did not clearly indicate what impairment caused the Plaintiff's symptoms. (Id. at 114). Thus, the Plaintiff agreed to the CEs and would secure records from his treating doctors, which the Commissioner noted would be helpful in this decision-making process. (Id. at 112-114).

On September 15, 2014, the ALJ held a second hearing, (Id. at 35), during which the Plaintiff was represented by his second of three attorneys. At this hearing the ALJ took the Plaintiff's testimony, as well as the testimony of the vocational expert ("VE"). (Id. at 35-69). Following this hearing, the ALJ found that the Plaintiff was not disabled from July 22, 2009, through the date of the decision. (Id. at 27). The Plaintiff requested a review of the ALJ's decision on December 15, 2014, but on February 5, 2016, the Appeals Council denied the request, therefore finalizing the Commissioner's decision. (Id. at 1-4, 12). See C.F.R. §§ 404.981, 416.1481.

Plaintiff exhausted his administrative remedies and this case is now before the Court for disposition of the parties' cross-motions for summary judgment. Plaintiff's Motion for Summary Judgment, (Doc. No. 11), and Plaintiff's Memorandum in Support, (Doc. No. 12), were filed on August 22, 2016. Defendant's Motion for Summary Judgment, (Doc. No. 14) and Memorandum in Support, (Doc. No. 15), were filed on October 24, 2017. Plaintiff did not file a response to the Defendant's motion for Summary Judgment and the time for doing so has passed. The pending motions are ripe for adjudication.

B. Factual Background

Plaintiff alleges that his disability began on July 22, 2009. (Tr. 279). At the first administrative hearing on March 3, 2014, the ALJ asked Plaintiff if he had made any effort to obtain a medical source statement from any of his treating physicians. (Id. at 74). Plaintiff's attorney responded, "The issue that we have is some … of the issues are still kind of up in the air as far as the doctor's opinion as to maybe what's causing them…" (Id.). In response, the ALJ kept the record open for two weeks following the hearing and requested that Plaintiff's attorney retrieve the opinions of Plaintiff's treating physicians regarding Plaintiff's conditions and functioning. (Id. at 75). Additionally, at this same hearing Plaintiff's attorney requested two CEs, including one with a neurologist. (Id. at 10). The ALJ granted this request stating that it would help in this decision. (Id. at 75, 112-14). At the close of the hearing on March 3, 2014, the ALJ determined that a decision would be premature because he could not decide Plaintiff's case solely on his testimony. (Id. at 111).

The record shows that the ALJ ordered a CE performed by Albert Whitaker, Jr., M.D., which the Plaintiff completed on April 1, 2014. (Id. at 906-11). At the beginning of the second hearing held on September 15, 2014, the ALJ asked whether Plaintiff tried to obtain any medical source statements from treating physicians. Plaintiff responded, "No, sir, not that I'm aware of." (Id. at 40). Still lacking the requested medical opinions, the ALJ noted that once he had all of the information from the performed CE, plus any additional information the Plaintiff's attorney submitted, he may or may not hold a supplemental hearing. (Id. at 115).

In his decision, the ALJ reviewed Dr. Whitaker's CE report and afforded great weight to it because Dr. Whitaker was deemed an acceptable medical authority. (Id. at 23-25). The CE's credibility increased further when Plaintiff testified that Dr. Whitaker spent approximately an hour

with him, resulting in what Plaintiff felt was a thorough examination. (Id. at 25, 44-45). Plaintiff has not challenged the Commissioner's findings related to Dr. Whitaker's report. (Doc. No. 15 at 11).

The ALJ did order the second CE in the form of a neurological exam. However, because no examining source was located within a reasonable distance, and because the provider that was an hour away and only scheduled appointments at 9:15 AM, the neurological CE was never scheduled. (Id. at 16-17, 421). On June 27, 2014, Plaintiff's attorney requested that the ALJ reschedule the neurological exam. No response was given. (Id. at 17, 425). Nevertheless, Plaintiff's attorney did not raise the issue during the second hearing held on September 15, 2014. Nor did Plaintiff's attorney renew the request or make any objection to the evidence of record. (Id. at 17, 425). Consequently, the ALJ found that reasonable efforts[1] were made to complete the record and issued his decision on the current evidence of record. (Id. at 17).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

> (1) whether claimant is engaged in substantial gainful activity—if yes, not disabled;
> (2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509—if no, not disabled;
> (3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1 and meets the duration requirement—if yes, disabled;
> (4) whether claimant has the residual functional capacity ("RFC") to perform his or her past relevant work—if yes, not disabled; and

---

[1] According to 20 C.F.R. §§ 404.1512(d)(1), 416.912(d)(1), "every reasonable effort" means the Commissioner will make an initial request from your medical source and, at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, the Commissioner will make one follow-up request to obtain the medical evidence necessary to make a determination.

(5) whether considering claimant's RFC, age, education, and work experience he or she can make an adjustment to other work—if yes, not disabled.

See 20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 26–27).

In reaching her decision, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since July 22, 2009, the alleged onset date. (Id. at 19). At the second step, the ALJ found that the Plaintiff had the following severe impairments: "status post mitral valve and aortic valve replacement; diabetes mellitus; and left leg deep vein thrombosis." (Id.). At the third step, the ALJ determined that Plaintiff did not have an "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 …." (Id. at 20).

Subsequently, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform "sedentary work." In particular, the ALJ found that Plaintiff retained the RFC to perform:

> [s]edentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can occasionally climb ramps and stairs, never climb ladders, ropes, and scaffold, and occasionally kneel, stoop, crouch and crawl. The claimant can frequently reach, handle, and finger, bilaterally. The claimant must avoid concentrated exposure to extreme heat.

(Id. at 20). When making this finding the ALJ explicitly states that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence…." (Id.). The ALJ further opined that she "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (Id.).

At the fourth step, the ALJ found that Plaintiff could not perform his past relevant work. (Id. at 26). At the fifth and final step, the ALJ concluded that after considering the testimony of a

vocational expert ("VE") and Plaintiff's "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform…." (Id.).

Plaintiff believes he is entitled to judgment as a matter of law on the grounds that the ALJ failed to fulfill his duty to fully develop the record. (Doc. No. 12 at 5). Plaintiff also claims that the ALJ erred in determining Plaintiff's credibility. (Id.). Defendant argues that Plaintiff's assertions that the Commissioner erred as a matter of law is without merit and must fail because the decision accords with the proper legal standards and is supported by substantial evidence in the administrative record. (Doc. No. 15 at 24). The Defendant requests this Court's affirmation of the Commissioner's final decision. (Doc. No. 14 at 1).

## II. STANDARD OF REVIEW

The Court must decide whether substantial evidence supports the final decision of the Commissioner and whether the Commissioner fulfilled his lawful duty in his determination that Plaintiff was not disabled under the Social Security Act. See 42 U.S.C. §§ 405(g) and 1382(c).

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive."

42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and [do]ing more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence….").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome–so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

In his motion for summary judgment, Plaintiff attacks the Commissioner's final decision on two grounds, arguing that the ALJ failed to: (1) fulfill his duty to develop the record; and (2) rely on substantial evidence in concluding that Plaintiff's testimony was less than credible. (Doc. No. 12 at 5). Defendant asserts that not only do regulations fail to support Plaintiff's allegations, but that substantial evidence supports the ALJ's decision regarding Plaintiff's credibility. (Doc. No. 15 at 7, 15). Upon review of the parties' motions and the ALJ's decision, this Court agrees with Defendant that the ALJ fulfilled all his duties and based his determination of Plaintiff's credibility on substantial evidence.

A. The ALJ fulfilled his regulatory duty to fully develop the record.

Plaintiff alleges that the Commissioner failed to fully develop the record by not obtaining the neurological CE he states is required. (Doc. No. 12 at 5). To begin with, the burden is on the Claimant to prove that they are disabled. 20 C.F.R. § 416.945(a)(3) ("In general, [claimants] are responsible for providing the evidence we will use to make a finding about your residual functional capacity."). See Bowen v. Yuckert, 482 U.S. 137, 146 Fn.5 ("The claimant first must bear the burden at step one of showing that he is not working, at step two that he has a medically severe impairment or combination of impairments, and at step four that the impairment prevents him from performing his past work."). However, ALJs do have duties of their own. For instance, an ALJ must help "develop [claimants'] complete medical history for at least the 12 months preceding the month in which [they] file [their] application." 20 C.F.R. § 416.912(b)(1). This means the ALJ "will make an initial request for evidence from [a claimant's] medical source or entity that maintains [their] medical source's evidence." Id. at (b)(1)(i). The ALJ must also make one follow-up request if evidence is not received between 10–20 days after the initial requires. (Id.).

The ALJ's duties to make reasonable efforts to develop claimants' medical history also includes "arranging for a consultative examination[] *if necessary*." 20 C.F.R. § 416.945(a)(3) (emphasis added). A CE becomes necessary when: (1) claimants' evidence as a whole is insufficient to support a decision; (2) evidence is inconsistent; and (3) the current severity of claimant's impairment is not established but there is an indication of a change in the claimant's condition that is likely to affect his ability to work. 20 C.F.R. §§ 404.1519(a)(b) and 416.919(a)(b).

Plaintiff argues that the neurological CE was deemed necessary by the ALJ. The Court disagrees. As the Defendant points out, the record contains no evidence that the ALJ determined that the neurological CE was necessary to adjudicate Plaintiff's claim. (Doc. No. 15 at 7; Tr. 91,

111). Rather, the record reveals that the ALJ thought "the idea of an exam with a neurologist [was] a good idea." (Tr. 111).

In arguing that the ALJ violated his duties, Plaintiff focuses solely on the neurological exam that was never performed, but fails to acknowledge the CE performed by Dr. Whitaker. (Doc. No. 12 at 5-7). It is true that during the March 3, 2014 hearing, Plaintiff, Plaintiff's attorney, and the ALJ agreed that the evidence on record did not clearly explain Plaintiff's condition. (Tr. 105-111). However, Plaintiff's CE from Albert Whitaker, Jr., M.D. resolved this insufficiency of evidence. (Id. at 906-911). The ALJ put great weight on Dr. Whitaker's report and Plaintiff did not challenge the ALJ's determinations based on the report. (Id. at 25). By ordering the CE performed by Dr. Whitaker, the ALJ fulfilled his duties to take reasonable steps to help develop Plaintiff's medical records. Plaintiff cannot shift to the Commissioner the burden of proving Plaintiff's disability by asking the ALJ to schedule more CEs than the ALJ deemed necessary. The ALJ afforded ample time for Plaintiff to submit his own evidence, before the next hearing after Dr. Whitaker's report was submitted to Plaintiff's attorney. (Tr. 422-423, 906-911). Unfortunately, Plaintiff's attorney did not respond until over a month had passed, thus making his response untimely. (Tr. 425).

B. <u>Substantial evidence supported the Commissioner's decision to not decide the case based solely on the Plaintiff's testimony.</u>

Plaintiff next contends that the ALJ's determination to afford less weight to Plaintiff's testimony was not supported by substantial evidence. (Doc. No. 12 at 8). In doing so, Plaintiff first objects to the ALJ's "boilerplate credibility finding." (Id.). In his decision, the ALJ stated:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects

> of these symptoms are not entirely credible for the reasons explained in this decision.

(Tr. At 21). Plaintiff bases his argument off of Mascio v. Colvin, which held that an ALJ erred when using similar boilerplate[2] which determined a claimant's RFC prior to assessing their credibility. 780 F.3d 632, 639 (4th Cir. 2015). The Mascio court also found that such an error "would be harmless if he properly analyzed credibility elsewhere." Id. Defendant claims that Plaintiff ignores this latter holding in Mascio and argues that the use of boilerplate language was permissible because the ALJ followed a two-step process in assessing credibility. (Doc. No. 15 at 16). Defendant cites Craig v. Chater, which states:

> In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements about how your symptoms affect you.... *We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work….*

76 F.3d 585 (4th Cir. 1996) (quoting 20 C.F.R. §§ 404.1529(a)-(b)).

After reviewing the ALJ's decision, the Court finds that the use of boilerplate language amounts to a harmless error because of the thorough analysis written using considering substantial evidence. The ALJ first summarized Plaintiff's testimony. (Tr. 21). Then, the ALJ determined that Plaintiff's comments regarding intensity, persistence and limiting effects of his symptoms were not entirely credible. (Id.). Rather than make a conclusory statement, the ALJ goes through

---

[2] The pertinent language in Mascio stated, "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." 780 F.3d at 639.

great lengths explaining this conclusion by parsing through Plaintiff's medical history and contrasting his alleged symptoms with the ultimate findings of medical professionals. (Id. at 21–24). After reviewing Plaintiff's records, the ALJ ultimately concludes, "The claimant's subjective complaints of pain, fatigue, the need to lie down hours per day, and needing help[] with essentially every aspect of daily activities is not supported by the objective findings or subjective complaints in the treatment records." (Id. at 24). As Defendant mentioned, credibility may rely on a claimant's consistency with information on the record. (Doc. No. 15 at 17). See SSR 96-7P (stating "[o]ne strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."). In this case, the ALJ went through considerable length to compare and contrast Plaintiff's past allegations of the intensity, persistence, and limiting effects of his symptoms with the findings of objective medical professionals.

Plaintiff alleges that the ALJ did not "specifically state what testimony he found not credible and why." (Doc. No. 12 at 10). Again, the Court disagrees. The ALJ does not reduce the credibility of Plaintiff's entire testimony. In fact, the Commissioner found the Plaintiff credible in regards to the expectancy of his impairments in causing some of the alleged symptoms. (Tr. 21). The ALJ's credibility finding specifically targeted Plaintiff's testimony in regards to "the intensity, persistence and limiting effects" of Plaintiff's symptoms because Plaintiff had a history of alleging an intensity of symptoms simply unfounded by objective medical sources. (Id.).

Thus, because the ALJ applied the proper legal standards in not only the credibility assessment, but also in the disability determination, the Court finds the ALJ's decision supported by substantial evidence from the record. See Sively v. Heckler, 739 F.2d 987, 989-990 (4th Cir. 1984) (supporting the [Commissioner's] finding given a properly supported credibility

determination). See also Craig, 76 F.3d at 589 (abstaining from re-weighing conflicting evidence, making credibility determinations, or substituting its judgment for that of the [Commissioner]).

Finally, the Plaintiff's request for attorney's fees, which the Plaintiff proffered on the grounds that the ALJ's action in this case was not substantially justified, has lost its merit given this Court's conclusion that, in fact, the ALJ's action was substantially justified. Thus, this Court will not award attorney's fees to the Plaintiff under the Equal Access to Justice Act 28 U.S.C. § 2412(d), nor will the Court grant different relief of any kind.

## IV. CONCLUSION

After reviewing the record and motions for summary judgment filed by both parties, this Court finds, for reasons stated above, that (1) the ALJ did fully develop the record as required by the relevant regulations, and (2) the ALJ's decision was supported by substantial evidence in the record.

**IT IS THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 11), is **DENIED**;
2. Defendant's Motion for Summary Judgment, (Doc. No. 14), is **GRANTED**;
3. The Court hereby **ADOPTS** the decision of the Commissioner; and
4. The Clerk of the Court is directed to close this case.

Signed: September 30, 2017

Robert J. Conrad, Jr.
United States District Judge